| | |
|---|---|
| CERA LLP | Justina K. Sessions, SBN 270914 |
| Solomon B. Cera (Bar No. 099467) | WILSON SONSINI GOODRICH & ROSATI |
| Pamela A. Markert (Bar No. 203780) | Professional Corporation |
| 595 Market St. Suite 1350 | One Market Plaza |
| San Francisco, CA 94105 | Spear Tower, Suite 3300 |
| Telephone: (415) 777-2230 | San Francisco, California 94105 |
| Fax: (415) 777-5189 | Telephone: (415) 947-2197 |
| Email: scera@cerallp.com | Facsimile: (415) 947-2099 |
| Email: pmarkert@cerallp.com | Email: jsessions@wsgr.com |

*Attorneys for Plaintiff SPX Total Body Fitness LLC and the Proposed Class*
*[Additional Counsel listed on signature page]*

*Counsel for Defendant Google LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SPX Total Body Fitness LLC, d/b/a The Studio Empower, on behalf of itself and all others similarly situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>GOOGLE LLC,<br><br>　　　　　　　　　Defendant. | Case No. 4:21-cv-00801-HSG<br><br>**JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**<br><br>Judge:　Hon. Haywood S. Gilliam, Jr.<br>Date:　May 11, 2021<br>Time:　2:00 p.m.<br>Ctrm:　2 – 4th Floor |

Plaintiff SPX Total Body Fitness LLC, d/b/a The Studio Empower ("Plaintiff" or "SPX") and Defendant Google LLC ("Defendant" or "Google"), jointly submit this JOINT CASE MANAGEMENT STATEMENT AND PROPOSED ORDER pursuant to the Court's Order (ECF No. 12) and Civil Local Rule 16-9.

**1.     Jurisdiction and Service**

**(a) Subject Matter Jurisdiction:** Plaintiff alleges that this Court has original subject matter jurisdiction pursuant to Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26). This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15(a), 26). Google does not dispute subject matter jurisdiction.

**(b) Personal Jurisdiction and Venue**: Plaintiff alleges that this Court has personal jurisdiction over the Defendant pursuant to Fed. R. Civ. P. 4(k) and 15 U.S.C. § 22. Plaintiff alleges that this Court has personal jurisdiction over the parties in this case because Defendant has its principal place of business in Mountain View, California and is incorporated in the State of Delaware. Google does not dispute personal jurisdiction.

Plaintiff alleges that venue is proper in this District pursuant to Sections 4, 12, and 16 of the Clayton Act (15 U.S.C. §§ 15, 22, and 26) and 28 U.S.C. §§ 1391. Plaintiff alleges that at all times relevant to the Complaint, Google has been headquartered in and has its principal place of business in this District, and a substantial part of the conduct giving rise to this action occurred in this District. Google does not dispute that venue is proper in this District.

**(c) Service**: Defendant was served on February 5, 2021. ECF No. 17. No parties remain to be served.

**2.     Facts**

**A.     Plaintiff's Summary of Facts**

Since entering the online advertising exchange business, Google has pursued and executed a strategy to dominate the ad server market. Currently, more than 90 percent of large publishers use Google's publisher ad server. This class action concerns Google's anti-competitive and illegal agreement with non-party co-conspirator Facebook, Inc. ("Facebook") to maintain its market power in the ad server market in the United States.

Google's dominance was challenged in 2014 when publishers devised a technical innovation called "header bidding." By 2016, about 70 percent of major online publishers in the United States had adopted header bidding. Advertisers migrated to header bidding in droves because it helped them to optimize the purchase of inventory through the most cost-effective exchanges. The adoption of header bidding threatened Google's margins on its exchanges.

By 2017, Facebook began to effectively compete with Google's ad server. Plaintiff alleges that instead of competing with Facebook, Google and Facebook entered into an illegal agreement in which Facebook agreed withdraw its efforts to establish independence from Google's exchange platform in return for preferred treatment in the Google advertising business system. As part of the agreement, Facebook agreed to halt its support and initiatives in header bidding, and instead use only Google's ad server. In return, Google agreed to provide Facebook with an advantage in its auctions by ensuring Facebook received special information, a speed advantage to assist Facebook in succeeding in the auctions, a guaranteed win rate, and to give Facebook access to the identity of users in publishers' auctions.

Plaintiff contends that Google's unlawful agreement with Facebook caused and continues to cause class members to pay more to advertise and reduces the effectiveness of their advertising than if Google and Facebook had remained competitors, thereby harming class members' return on investment in delivering their products and services and reducing output.

Plaintiff seeks certification of a nationwide class of all persons and entities who from September 1, 2018, until the present purchased advertising on or over Facebook (the "Class"). Plaintiff maintains that while the exact number of Class members is unknown, SPX believes there are tens of thousands of Class members, making joinder impractical, and all involve critical questions of law and facts in common. Plaintiff submits that the claims in the Complaint are typical of the claims of all Class members and that the interests of the Class will be fairly and adequately protected. Plaintiff alleges that the questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**B.     Defendant's Summary of Facts:**

Google denies the substantive factual and legal allegations in Plaintiff's Complaint.

"Ad tech" refers to advertising technology that connects internet publishers, who seek to monetize their content by selling advertising space on their websites or mobile applications ("apps") ("publishers"[1]), with advertisers, who seek to present relevant digital advertising to consumers. Publishers can sell their digital advertising space (sometimes referred to as "inventory") in many ways: they can contract directly with advertisers; they can conduct auctions to allow advertisers to bid on the inventory; or they can use a third-party ad tech provider, like Google, to conduct auctions. Advertisers and publishers of all sizes, around the world, choose to use Google's ad tech products because they perform better, by showing more relevant ads that users are more likely to engage with, generating more revenue for publishers. Ad tech can also help publishers manage their inventory, as well as facilitate loading and display of advertising content on the publisher's web page or in their apps, and help advertisers reach their intended audiences affordably and effectively. Because ad tech connects advertisers, publishers, and consumers who view online content, Google has to take into account all their competing interests. Google's innovation has resulted in quality products that enable the most useful ads to be seen by the most relevant audiences.

Though popular with customers, Google's ad tech products and services are far from the only choices available. Advertisers and publishers who prefer not to use Google's ad tech – or who want to use other products in addition to Google's (called "multi-homing") – have a wide array of choices. Plaintiff's Complaint claims that Google has "market power" in an "ad server market" and in a "display ad exchange market." But the digital advertising marketplace is vibrantly competitive, with competitors like Facebook and Amazon playing at least as important roles as Google, and a host of other significant firms offering competitive alternatives. In addition, advertisers' choices are not limited to digital advertising alone; they have other ways to reach their customers, including television, radio, and print media. Publishers likewise have choices about how to monetize their

---

[1]   In the ad tech context, "publisher" refers to any person, company, or organization that operates a website or mobile application which offers content to internet users. An ad tech publisher includes, but is not limited to, the traditional notion of a "publisher" as a person, company, or organization that prepares and issues newspapers, journals, books, or other works for sale.

content, such as selling their advertising inventory directly to advertisers and relying more heavily on subscription-based business models.

Plaintiff's allegations regarding header bidding are inaccurate. "Header bidding" is when publishers run an auction among multiple ad exchanges for a given ad impression. Header bidding has significant drawbacks, including that it can make webpages take longer to load or drain device batteries faster, and that it increases the complexity of the advertising auction process. Google developed an alternative, called Open Bidding, that mitigates many of the problems associated with traditional header bidding. Moreover, Google's publisher-side tools can be used with header bidding, so publishers who want to use Google ad tech and also receive bids through header bidding can do so. And industry reports state that header bidding adoption has grown since Google introduced Open Bidding.

Plaintiffs mischaracterize the terms and misunderstand the impact of a procompetitive agreement between Google and Facebook. That agreement enables Facebook's Audience Network to participate in Open Bidding. Plaintiff's suggestion that Facebook receives unfair or unequal status in auctions is incorrect. So is Plaintiff's suggestion that the agreement reduced competition. Facebook's participation in Open Bidding results in more competition because it means more ad networks and exchanges are participating in the same auction. Facebook also participates in similar auctions on other ad tech platforms.

**3.      Legal Issues**

**Plaintiff's Statement:**

Plaintiff has brought claims alleging an unlawful agreement in restraint of trade in violation of Section One of the Sherman Act, 15 U.S.C. § 1.

**Google's Statement:**

The legal issues include:

- Definition of the relevant antitrust market, including whether any such market constitutes a two-sided transaction platform pursuant to *Ohio v. American Express Co.*, 585 U.S. ___, 138 S. Ct. 2274 (2018);

- Whether Plaintiff has adequately alleged, and can establish, that Plaintiff has antitrust standing and has suffered antitrust injury;
- The correct legal standard to apply to Plaintiff's Sherman Act claim, *i.e.*, the *per se* rule or the rule of reason;
- Whether any of the conduct alleged is an unreasonable restraint of trade under the Sherman Act.

**4.     Motions**

Currently pending before the Court is Plaintiff's motion to appoint interim counsel pursuant to Fed. R. Civ. P 23(g). ECF No. 25. Any responses to the motion were due by April 12, 2021. No responses were filed. The motion hearing is set for July 1, 2021 at 2:00 PM. Plaintiff respectfully submits that in the absence of opposition to the motion, the Court can take the matter up as part of the Case Management Conference and need not wait until the scheduled hearing.

Google anticipates submitting a motion to dismiss the Complaint on or before June 2, 2021. ECF Nos. 22, 23. Further, pending before the United States Judicial Panel on Multidistrict Litigation is Google's Motion to Transfer of Actions to the Northern District of California Pursuant to 28 U.S.C. §1407 For Coordinated or Consolidated Proceedings, which was filed on April 30, 2021.

If the Court denies Google's motion to dismiss, following appropriate discovery, Plaintiff anticipates filing a motion for class certification. If Plaintiff seeks certification of the class described in the Complaint, Google anticipates that it will oppose such a motion.

The parties also may file motions for summary judgment.

**5.     Amendment of Pleadings**

Plaintiff proposes that the initial deadline for amending the complaint should be ninety (90) days before the conclusion of all fact discovery. Google proposes that any amendments to the pleadings be made in accordance with Federal Rule of Civil Procedure 15.

On April 30, 2021, parties filed a stipulation to substitute SPX Total Body Fitness LLC d/b/a The Studio Empower ("SPX") for Kimberly Negron as the actual party in interest. The Court entered an Order substituting the parties on May 3, 2021. ECF No. 34.

Plaintiff's counsel advised Google's counsel that they have been contacted by other persons or entities who have indicated an interest in filing a claim related to this action. If Plaintiff's counsel is retained, adding such persons or entities as new plaintiffs could be done by stipulated agreement or by filing new complaints, which would be designated as related to this action. It is not anticipated that any "new" complaints would materially vary from the Complaint and would not prejudice the Defendant as it proceeds in response to the Complaint. None of those persons or entities object to the 23(g) motion that is pending before the Court.

Google cannot respond to Plaintiff's suggestions regarding new plaintiffs or complaints without knowing the parties that Plaintiff would propose to add or the new complaints that Plaintiff proposes to file.

**6.     Evidence Preservation**

The parties hereby certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and that they have already begun the meet and confer process pursuant to Fed. R. Civ. P. 26(f). *See* ¶ 17 for the parties' proposed ESI schedule.

Guideline 2.04 of this District's ESI Guidelines provides for disputes regarding ESI to be presented to the Court at the earliest possible opportunity, such as the initial Case Management Conference.  The parties request that the Court schedule another Case Management Conference 45 days after the submission of any proposed protective order and ESI Order so that the court can promptly address any disputes that may arise regarding ESI issues and/or the terms of the ESI Order and/or Protective Order. If the parties reach agreement, this Case Management Conference may be canceled.

**7.     Disclosures**

Plaintiff proposed that the parties exchange Rule 26 initial disclosures within thirty (30) days after the completion of briefing on the motion to dismiss. *See infra* ¶ 17. Google agrees.

**8.     Discovery**

**Plaintiff's General Statement:**

No discovery has been served to date, based on the pleadings that have been filed. Plaintiff acknowledges that a certain amount of discovery could be coordinated with the parties in *In Re*

*Google Digital Advertising Antitrust*, 20-cv-3556 (BLF) [the Publishers Class Case], and there would be both cost and judicial efficiencies in coordinating discovery. However, this is not a reason to delay certain aspects of discovery that are unique to this case or often directed by the Court. This includes production of Defendant's materials already produced to the Federal government and various States governments, which are relevant to the Plaintiff's claims, initial disclosures, a protective order, an ESI protocol, and other procedural documents. Plaintiff suggests the schedule outlined in paragraph 17 for the remainder of discovery.

Once discovery commences, Plaintiff intends to serve document requests, admissions requests, and interrogatories, and to conduct depositions of Defendant and non-party witnesses who may have knowledge regarding or related to, the allegations set forth in the Plaintiff's Complaint. Plaintiff anticipates significant third-party discovery from Facebook.

**Defendant's General Statement:**

No discovery has been served to date. Google agrees with Plaintiff that discovery should be coordinated with any discovery in *In Re Google Digital Advertising Antitrust Litigation* (which is the lead case for advertisers), as well as with the eighteen other related cases that are currently pending across the country.

Plaintiff's vague request for early discovery of unidentified "materials produced to the Federal government and various States governments" is not even remotely tailored to materials relevant to Plaintiff's single Section 1 claim in this case. Google will respond to Plaintiff's requests for production if and when they are served, in accordance with the Federal Rules of Civil Procedure.

**9.    Class Actions**

Plaintiff proposes that it will file a motion for class certification pursuant to Federal Rule of Civil Procedure 23 after completion of discovery on the merits and expert discovery, which will serve as class and merits expert discovery. *See infra para* 17.

Google agrees that any motion for class certification should follow completion of fact discovery. As explained further in Google's proposal in section 17 below, Google believes that merits expert reports must follow, not precede, class certification.

All attorneys of record have reviewed the Procedural Guidance for Class Action Settlements.

**10.     Related Cases**

   **Plaintiff's Statement:**

There are currently no related cases. There are currently several class actions pending before Judge Freeman, where Plaintiff's unopposed motion to relate was denied. *See In Re Google Digital Advertising Antitrust*, 20-cv-3556 (BLF), ECF No. 108. The parties here submit that this case will benefit from discovery coordination since there is significant factual overlap with this matter. *See id.*, ECF Nos. 88, 94, 108.

   **Google's Statement:**

On April 30, 2021, Google filed a motion before the Judicial Panel on Multidistrict Litigation to transfer and centralize this case, and the following cases, under 28 U.S.C. § 1407.

   ***Cliffy Care Landscaping LLC v. Facebook, Inc. et al.*, No. 21-cv-00360 (D.D.C.).**

Like Plaintiff here, the *Cliffy Care* complaints bring a Section 1 claim based on much of the same alleged conduct: that header bidding was a competitive alternative, and that Google tried to suppress it by introducing new auction designs, encouraging adoption of Accelerated Mobile Pages, and entering into the 2018 agreement with Facebook. The *Cliffy Care* plaintiffs assert that they paid too much for advertising space that they bought using Google ad tech products and services. The putative classes include all persons who bought digital display advertising through Google, Amazon, or anyone other than Facebook. Originally filed as three separate complaints, the cases have been consolidated.

   *Newspaper cases.*

HD Media Company, a newspaper owner, sued Google and Facebook in the Southern District of West Virginia on January 29, 2021. Then, between April 19 and 21, 2021, twelve similar lawsuits were filed by the same counsel on behalf of newspapers or newspaper owners in eleven different Federal District Courts.[2] Like Plaintiff's, these complaints claim that Google considered header

---

[2]     The case numbers are: 21-cv-00051-TSK (N.D. W.Va.); 21-cv-00077 (S.D. W.Va.); 21-cv-00251 (S.D. W. Va.); 21-cv-00951-JPH-DLP (S.D. Ind.); 21-cv-01915-MHW-KAJ (S.D. Ohio); 21-cv-00150 (S.D. Tex.); 21-cv-00498-WCG (E.D. Wis.); 21-cv-00965-SAG (D. Md.); 21-cv-09716-WJM-ESK (D.N.J.); 21-cv-03446-PKC (S.D.N.Y.); 21-cv-00554-LPS (D. Del.); 21-cv-00072-GHD-RP (N.D. Miss.); 21-cv-00274-HTW-LGI (S.D. Miss.); 21-cv-00518-MPK (W.D. Penn.).

bidding a threat and sought to eliminate it through auction design, Open Bidding, Accelerated Mobile Pages, and the 2018 Google-Facebook agreement. Among the harms alleged is that "Google was able to extract a supracompetitive share of Plaintiff's advertising revenues." These complaints also allege that Google monopolized a digital advertising market that includes "ad tech market platforms."

Associated Newspapers Ltd., which publishes *The Daily Mail*, also filed an antitrust suit against Google on April 20, 2021, in the Southern District of New York. Associated Newspapers claims that Google monopolized ad-tech related markets by allegedly tying products together, leveraging a search monopoly, designing auctions improperly, and suppressing header bidding. The header-bidding allegations include challenges to Open Bidding and Accelerated Mobile Pages. Like the other publisher plaintiffs, Associated Newspapers claims that it received too little money for its advertising inventory.

***Texas et al. v. Google, LLC*, No. 20-cv-00957 (E.D. Tex.).**

Ken Paxton, the Texas Attorney General, and nine other state AG's alleged that Google monopolized and attempted to monopolize "online display advertising markets" (the "State AG case"). This lawsuit is based on the same core factual allegations, and asserts the same legal theories of monopolization and tying, as the other cases. The AGs amended their complaint to add five more states and Puerto Rico as plaintiffs on March 15, 2021. Like the many private lawsuits, the State AG complaint alleges that Google: tied ad-tech products together; failed to share information with its rivals; designed auctions improperly; and tried to suppress header bidding through Open Bidding, Accelerated Mobile Pages, and the 2018 Google-Facebook agreement. The State AG complaint includes claims under both Sections 1 and 2 of the Sherman Act, as well as various state laws. Among the harms alleged are increased costs to advertisers and decreased revenue to publishers.

***In re Google Digital Advertising Antitrust Litig.*, No. 20-cv-03556-BLF and *In re Google Digital Publisher Antitrust Litig.*, No. 20-cv-08984-BLF (N.D. Cal.).**

Judge Freeman has consolidated eight putative ad-tech class actions into two lead cases: one on behalf of advertisers, and one on behalf of publishers. The advertiser and publisher complaints all allege that Google has monopolized one or more market(s) relating to ad tech. The various complaints allege that Google has done so through the same allegedly anticompetitive practices. In particular,

both sets of complaints allege that Google: acquired potential rivals; tied products together; designed auctions to exclude competitors; leveraged its position in online search; failed to give information to its competitors; and tried to suppress header bidding. The advertiser plaintiffs claim that they paid too much for advertisements that they placed using Google's ad tech. The publisher plaintiffs claim that they received too little for the same ads. Judge Freeman denied Ms. Negron's motion to relate her case to *In re Google Digital Advertising*. Nonetheless, the factual allegations and the alleged antitrust markets overlap significantly.

***Organic Panaceas, LLC v. Google LLC and Alphabet Inc.*, No. 21-cv-02629 (N.D. Cal.).**

On April 12, 2021, Organic Panaceas, LLC, an advertiser filed a class action against Google and Alphabet. This plaintiff makes essentially the same claims under Section 2 of the Sherman Act as the *Digital Ads* and *Digital Publishers* plaintiffs, claiming that Google monopolized "the market for digital display advertising and its component subparts and services" by leveraging its position in online search, designing auctions to exclude competitors, failing to share information with competitors, and trying to suppress header bidding. Organic Panaceas has filed a motion to relate its case to *In re Google Digital Advertising*.

**11. Relief**

**Plaintiff's Statement**

Plaintiff seeks the following relief in its Complaint:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and appointing Plaintiff as the Class representative and Plaintiff's counsel as class counsel;

B. Finding and declaring that Defendant's misconduct, as alleged in the complaint, violates Section 1 of the Sherman Act, 15 U.S.C. §1;

C. Awarding damages, or restitution of monies Defendant unlawfully obtained from Plaintiff and the Class as a result of Defendant's misconduct alleged herein;

D. Awarding injunctive and other equitable relief available under applicable law as the Court deems necessary to enjoin and retrain Google and all of its agents or successors from engaging in the unlawful conduct which is set forth in the Complaint;

  E. Awarding Plaintiff and other members of the Class prejudgment and post-judgment interest, attorneys' fees, expenses and other costs; and

  F. Awarding such other further relief as this Court may deem just and proper.

A specific determining of the amount of damages suffered by the Class must await discovery.

**Defendant's Statement**

Google denies that Plaintiff is entitled to any relief.

**12. Settlement and ADR**

The parties filed their ADR Certification on April 15, 2021. See ECF Nos. 28, 29. The Parties agree that ADR is premature at this time. As the case progresses, however, the parties are amenable to discussing potential resolution of the claims through mediation with a private mediator, which is the parties' preferred ADR option.

**13. Consent to Magistrate Judge For All Purposes**

The parties respectfully decline to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

**14. Other References**

The parties agree that this case is neither suitable for reference to binding arbitration nor a special master.

On April 30, 2021, Google filed a motion before the Judicial Panel on Multidistrict Litigation to transfer and centralize twenty related cases, including this case, under 28 U.S.C. § 1407.

**15. Narrowing of Issues**

The parties agree that it is premature to address any narrowing of issues for trial, but they will continue to confer on this topic as the case progresses.

**16. Expedited Trial Procedure**

The parties agree that this action is not the type of case that can be handled under the Expedited Trial Procedure of General Order 64.

**17.     Scheduling**

**Plaintiff's Proposed Schedule**

Plaintiff contends that its proposed schedule establishes a framework for the litigation, which will ensure judicial efficiency as well as limit the cost burden of litigation on parties. Plaintiff's proposal establishes a timeline in which preliminary litigation documents will be negotiated in a timely manner, thus ensuring the matter is not stalled and can continue smoothly following the Court's ruling on any motion to dismiss filed by Google. It also establishes a process through which Defendants will begin to produce relevant documents that have already been produced to government agencies, while a ruling on the motion to dismiss is under consideration. As Plaintiff understands these documents have already been produced and reviewed, the production to Plaintiff in this matter will be of minimal burden to Google and follows a process routinely done in antitrust proceedings where concurrent government investigations are pending.

Further, the schedule currently proposed by Defendants would create great inefficiencies in expert discovery. Plaintiff proposes that expert discovery be completed well after completion of fact discovery. It calls for only one round of expert reports and one round of expert depositions, and an efficient time frame from the close of discovery to trial. Google's proposal establishes not only a much longer process (almost one year longer than Plaintiff's) from the end of fact discovery to trial but a large cost to both parties, now consisting of two rounds of expert reports, two rounds of expert depositions and two rounds of *Daubert* briefing. Plaintiff's proposal is consistent with the Ninth Circuit's metric for evaluating experts at the class-certification stage. *See Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018). Plaintiff proposes that setting any other dates than those contained in the proposal below is premature until the Court has ruled on the motion for Class Certification. The parties, therefore, propose that further scheduling, including setting a trial date, motions *in limine*, and deadlines for any other discovery, motions, or proceedings, be deferred until after the Court has issued its decision on Plaintiff's anticipated motion for Class Certification.

**Google's Proposed Schedule**:

The parties disagree over some aspects of class-certification procedure and what should follow. In particular, Plaintiff's proposal that the parties engage in merits expert discovery before

class certification is impractical. Google proposes a procedure in which the parties engage in any expert discovery relating to class certification during the briefing on any motion for class certification, and then engage in merits expert discovery after class certification is decided. The parties and their experts cannot address all merits issues unless and until the scope of any individual or class claims is known. For example, the scope of any damages expert analysis would differ significantly if the damages at issue involved SPX only or a class of advertisers. The potential analyses relating to liability, including antitrust impact, will also depend on resolution of class-certification issues. While SPX does not identify any of the specific ad tech products or services it used, or when, any assessment of the challenged agreement's impact must necessarily take account of the products and services that the plaintiff or plaintiffs actually used. This cannot be done until the parties know whether claims will proceed individually or on behalf of a class (and, if so, what class).

The parties also disagree over whether Google must produce "documents produced to Federal and State governments which are relevant to Plaintiff's claims." Google will respond to properly served document requests, including by producing relevant documents that may have been previously produced to Federal or State governments if appropriate. But Plaintiff's demand for a wholesale re-production of documents that Google produced in connection with unidentified government investigations and/or litigations is vastly overbroad; limiting that request to only "relevant" documents does not help, as it would require Google to re-review an unidentified number of document productions on a wide variety of issues to determine if they contained documents relevant to the single claim Plaintiff brings here.

**The Parties' Proposed Schedules Are Compared In The Chart Below:**

| Event | SPX's Proposal | Google's Proposal |
|---|---|---|
| Deadline to submit protective order, deposition protocol, E-Discovery protocol | 45 days after the May 11, 2021 CMC proceeding | |
| Production of documents produced to Federal and State governments which are relevant to Plaintiff's claims | 30 days after the Court enters a protective order | Plaintiff should make a document request under the Federal Rules, to which Google will respond. |
| Fact discovery begins | Date of ruling on Google's motion to dismiss if motion is denied | |

| Event | SPX's Proposal | Google's Proposal |
|---|---|---|
| Close of fact discovery | 24 months after ruling on Google's motion to dismiss, if motion is denied | |
| Close of Expert Discovery for class certification and on the merits | 4 months after the close of fact discovery | |
| Deadline to file motion for class certification | 45 days after close of fact and expert discovery | 45 days after close of fact discovery |
| Google opposition to motion for class certification. | 60 days after Plaintiff's motion for class certification. | |
| Any Google class certification expert challenges | Plaintiff does not believe expert challenges at class certification warrant separate briefing | 60 days after Plaintiff's motion for class certification. |
| Plaintiff's reply re class certification motion | 60 days after Google's opposition filed | |
| Plaintiff's opposition to any Google class-certification expert challenges | Plaintiff does not believe expert challenges at class certification warrant separate briefing | 60 days after any Google class-certification expert challenge filed |
| Google's opposition to any Plaintiff class-certification expert challenges | Plaintiff does not believe expert challenges at class certification warrant separate briefing | 30 days after any Plaintiff class-certification expert challenge filed.  Courts must consider the reliability of a plaintiff's statistical model at the class certification phase. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 791-92 (9th Cir. 2021) |
| Class certification hearing | At the Court's convenience | |
| Expert reports for issues on which a party bears the burden of proof | All expert reports should be served during expert discovery, four months after the close of fact discovery. Parties to submit expert disclosure schedule 60 days before close of fact discovery. | 60 days after the ruling on Plaintiff's motion for class certification |
| Rebuttal expert reports | All expert reports should be served during expert discovery, four months after the close of fact | 45 days after opening expert reports |

| Event | SPX's Proposal | Google's Proposal |
|---|---|---|
|  | discovery. Parties to submit expert disclosure schedule 60 days before close of fact discovery |  |
| Close of expert discovery | All expert reports should be served during expert discovery, four months after the close of fact discovery. Parties to submit expert disclosure schedule 60 days before close of fact discovery | 15 days after rebuttal expert reports |
| Deadline to file dispositive motions and *Daubert* motions | No later than 45 days after the Court issues a ruling on Plaintiff's motion for class certification. | 45 days after close of expert discovery |

18. **Trial**

Plaintiff has requested a trial by jury. Plaintiff believes a discussion of the scope and length of trial would be premature at this time.

Google estimates that a trial would take approximately 46 hours.

19. **Disclosure of Non-party Interested Entities or Persons**

Plaintiff filed her/its Certification of Interested Entities or Persons on May 4, 2021 (ECF No. 35), which stated that SPX is not aware of any persons that (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in the subject matter or in a party that could be substantially affected by the outcome of this proceeding. Google filed its Certification of Interested Entities or Persons on May 4, 2021 (ECF No. 36). Google LLC is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet Inc., a publicly traded company. No publicly traded company holds more than 10% of Alphabet Inc.'s stock. Other than Google LLC, XXVI Holdings Inc., and Alphabet Inc., Google is not aware of any persons that (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in the subject matter or in a party that could be substantially affected by the outcome of this proceeding.

## 20. Professional Conduct

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct and agree to comply with them.

## 21. Other

The parties do not wish to raise any other matters.

Dated: May 4, 2021

By:  */s/ Pamela A. Markert*
    Pamela A. Markert
    **CERA LLP**

    -and-

Fred T. Isquith, Sr. (*pro hac vice* forthcoming)
Fred T. Isquith, Jr. (admitted *pro hac vice*)
Robert S. Schachter (admitted *pro hac vice*)
Sona R. Shah (*pro hac vice* forthcoming)

**ZWERLING, SCHACHTER**
  **& ZWERLING, LLP**
41 Madison Avenue, 32nd Floor
New York, NY 10010
Tel: (212) 223-3900
Fax: (212) 371-5969
ftisquith@zsz.com
rschachter@zsz.com
sshah@zsz.com
ddrachler@zsz.com
havery@zsz.com

Fred T. Isquith, Jr. (admitted *pro hac vice*)
**ISQUITH LAW**
220 East 80th Street
New York, NY 10075
Tel: (607) 277-6513
isquithlaw@gmail.com

Heidi Silton (admitted *pro hac vice*)
Kate M. Baxter-Kauf (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue S., Suite 2200

By:  */s/ Justina K. Sessions*
    Justina K. Sessions
    **WILSON SONSINI GOODRICH & ROSATI**

    -and-

JONATHAN M. JACOBSON
NY State Bar No. 1350495
**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 497-7758
Facsimile: (212) 999-5899
Email: jjacobson@wsgr.com

*Counsel for Defendant Google*

Minneapolis, MN 55401-2159
Tel: (612) 596-4092
hmsilton@locklaw.com
kmbaxter-kauf@locklaw.com

Richard Vita (*pro hac vice* forthcoming)
**VITA LAW OFFICES, P.C.**
100 State Street, Suite 900
Boston, MA 02109
Tel: (617) 426-6566
rjv@vitalaw.com

*Attorneys for Plaintiff and the Class*

### **ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to N.D. Cal. L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from the signatories.

Dated: May 4, 2021                                   **CERA LLP**


                                                     *By: /s/ Pamela A. Markert*
                                                     Pamela A. Markert
                                                     Attorneys for Plaintiff

# CASE MANAGEMENT ORDER

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

**IT IS SO ORDERED**.

Dated:

　　　　　　　　　　　　　　　　　　　HONORABLE HAYWOOD S. GILLIAM, JR.
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE